**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **MICHAEL WAYNE COX,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | **CIVIL No: 5:14-cv-00201** |
| **JOHNNY CAMPBELL**, *et. al.*, | : | |
| | : | |
| | : | **PROCEEDINGS UNDER 42 U.S.C. §1983** |
| **Defendants** | : | **BEFORE THE U. S. MAGISTRATE JUDGE** |

## REPORT & RECOMMENDATION

This instant action before the Court arises out of two separate incidents that occurred during Plaintiff Michael Wayne Cox's detention at Jasper County Jail as a pre-trial detainee in 2013. Plaintiff claims that Defendants Campbell and Pound violated his constitutional right to due process by denying him the opportunity to post the scheduled bond amount listed on his arrest warrants; and that Defendant Wagner violated his First, Eighth, and Fourteenth Amendment rights when Defendant Wagner placed Plaintiff in a small holding cell in retaliation for requesting a grievance form. Now before the Court is the Motion for Summary Judgment filed by Defendants Campbell, Pound, Wagner. Doc. 33. Because Defendants Campbell and Pound are entitled to judgment as a matter of law regarding the opportunity to post the scheduled bond amount listed on his arrest warrant, and because Defendants are entitled to qualified immunity on those claims, it is hereby **RECOMMENDED** that Defendants Campbell and Pound's Motion for Summary Judgment be **GRANTED**. However, Plaintiff has demonstrated a genuine issue of material fact as to whether Defendant Wagner retaliated against Plaintiff in violation of his First Amendment rights by placing him in a holding cell after he requested a grievance, and whether the conditions of

the holding cell violated Plaintiff's Eight Amendment right against cruel and unusual punishment. It is therefore **RECOMMENDED** that Defendant Wagner's Motion for Summary Judgment be **DENIED**.

## I.   FACTUAL AND PROCEDURAL HISTORY

Around 10:38 at night on May 27, 2013, Michael Fox was pulled over near Jackson Lake for going 71 miles per hour in a 55 mile per hour zone. Doc. 1-2, Pl.'s Compl., Criminal Warrant, p. 3. After Plaintiff failed to follow the instructions of the police officer by removing his hands from the hood of the car, the situation quickly escalated, and Plaintiff eventually fled the scene while also attempting to strike the officer with his car. Doc. 1-2, pp. 4-7. Plaintiff fled to his home.

The next morning, on May 28, 2013 a Jasper County Magistrate Judge issued six separate warrants for Plaintiff's arrest. Doc. 1-2; Doc. 33-2. Each warrant listed the specific offense charged to Plaintiff, and listed the scheduled bond amount as to each offense, ranging from $1,000 to $5,000. *Id.* Plaintiff was arrested and booked the following morning, on May 29, 2013. Pl's Depo, Doc. 35, p. 11, 14. Plaintiff was given a rule book, sheets, toothbrush and clothing upon admission to the jail. Pl's Depo, Doc. 35, p. 12, 1-13. At 6:30 a.m. the same morning, Plaintiff inquired about bond. Doc. 1-1, p. 4. According to Plaintiff, he was told that he did not have a bond and that he had to wait for the "bond/first appearance hearing." *Id.* That hearing occurred on May 30, 2013, at 11 p.m., at which the presiding magistrate judge denied Plaintiff bond and ordered that his case be transferred to superior court. Doc. 1-2, p. 17.

On July 16, 2013, Plaintiff asked Defendant Wagner for a grievance form to complain about being denied cleaning chemicals for four days. Pl's Depo, Doc. 35, p. 16, 1-6. In fact, the entire cell block had not received cleaning chemicals. Pl's Depo, Doc. 35, p. 16, 12. Defendant Wagner informed Plaintiff that he was not receiving chemicals because he kept some left over

chemicals from a previous day. Pl's Depo, Doc. 35, p. 16, 14-25. Plaintiff then requested a grievance, and Defendant Wagner locked Plaintiff up in a "holding tank" for asking. Pl's Depo, Doc. 35, p. 17, 1-9. Plaintiff states that the room was "filthy," he was required to sleep halfway on the toilet, and was kept in the holding cell for four days. Pl's Depo, Doc. 35, p. 17, 1-8. Plaintiff also states that the holding cell was approximately "the size of a table," and that he had about "four square feet to stand in." Pl.'s Depo, Doc. 35, p. 17.

Plaintiff received grievance forms from Captain Walker, and filed three grievances while in the holding cell. Pl's Depo, Doc. 35, p. 17, 10-13; p. 20, 4-5. Plaintiff was released from the holding cell on the fourth day. Pl's Depo, Doc. 35, p. 17, 14-15. Plaintiff never received any of his grievances back, and was told that he could not see the grievances. Pl's Depo, Doc. 35, p. 19, 1-2.

Plaintiff, now a state prisoner currently confined at the Washington State Prison in Davisboro, Georgia, filed this *pro se* civil rights complaint in this Court seeking relief under 42 U.S.C. § 1983 on May 27, 2014. Doc. 1. The case was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Doc. 3.

Upon initial review pursuant to 28 U.S.C. § 1915A, Plaintiff's claims against Defendants Campbell, Pound, and Wagner were allowed to proceed for further factual development. Docs. 16, 22. Following discovery, Defendants' filed the instant motion for summary judgment.

## II.       SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury

question." See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), and *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See *Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See *id*. (citing *Celotex v. Catrett*, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. *Peek–A–Boo Lounge of Bradenton, Inc. v. Manatee Co., Fla.*, 630 F.3d 1346, 1353 (11th Cir. 2011). However, "unsworn statements, even from *pro se* parties, should not be 'consider[ed] in determining the propriety of summary judgment.'" *McCaskill v. Ray*, 279 F. App'x 913, 915 (11th Cir. 2008) (quoting *Gordon v. Watson,* 622 F.2d 120, 123 (5th Cir.1980)).

### III.      DISCUSSION

Plaintiff presents two claims of constitutional violations: (1) that Defendants Campbell and Pound violated his constitutional right to due process by denying him the opportunity to post the scheduled bond amount listed on his arrest warrants; and (2) that Defendant Wagner violated his First, Eighth, and Fourteenth Amendment rights when Defendant Wagner placed Plaintiff in a small holding cell in retaliation for requesting a grievance form. Defendants Campbell and Pound

argue that they did not violate Plaintiff's constitutional rights, while Defendant Wagner asserts that Plaintiff's claim against Defendant Wagner is barred by the Prison Litigation Reform Act because he did not properly exhaust his administrative remedies. This recommendation first addresses Defendant Wagner's affirmative defense of exhaustion.

A. Exhaustion

### 1. The Prison Litigation Reform Act

Before this Court may address Plaintiff's claims on the merits, it must determine whether Plaintiff exhausted his available administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). *Bryant v. Rich*, 530 F.3d 1368, 1372–78 (11th Cir. 2008) (noting that exhaustion is "a precondition to an adjudication on the merits"). However, "[b]ecause exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense … is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008) (internal quotations omitted). Therefore, Defendant's exhaustion defense is treated as if raised in a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b).

"To exhaust administrative remedies in accordance with the PLRA, prisoners must properly take each step within the administrative process." *Bryant*, 530 F.3d at 1378 (internal quotation marks omitted). This rule applies even where the administrative process is "futile and inadequate." *Alexander v. Hawk*, 159 F.3d 1321, 1325–28 (11th Cir. 1998). That said, administrative remedies must be "available" for the exhaustion requirement to apply. *See, e.g.*, *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1322–26 (11th Cir. 2007).

Because exhaustion is "a matter in abatement," it is properly the subject of dismissal.

*Bryant*, 530 F.3d at 1374-75. As with other matters in abatement, courts may consider facts outside of the pleadings when determining whether a prisoner properly exhausted his available administrative remedies. *Id.* at 1376. Additionally, courts may resolve factual disputes so long as those disputes do not decide the merits, and so long as the parties have a sufficient opportunity to develop a record. *Id.*

In ruling upon the affirmative defense of failure to exhaust, courts in this Circuit follow a two-step process established by *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008). First, courts look to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, the court takes the plaintiff's version of the facts as true. *Turner*, 541 F.3d at 1082. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*. If the complaint is not subject to dismissal based on the plaintiff's version of the facts, the court must proceed to the second step, where it makes specific findings of fact in order to resolve the disputed factual issues related to exhaustion. *Id.* At the second step, it is the defendant's burden to prove that the plaintiff failed to exhaust his available administrative remedies. *Id.*

### 2.  *Available Administrative Remedies*

During the period relevant to this case, the Jasper County Sheriff's Office provided detainees like Plaintiff at the Jail Facility with the following grievance procedure:

> 1. Prior to the implementation of the formal written grievance procedure, an inmate shall attempt to resolve his/her grievance informally through discussion with the person or persons primarily responsible for the act or failure to act. If this effort fails, the inmate may file a written grievance with the Jail Administrator. The inmate must file the grievance within five (5) working days of the latest of the following dates:
>
> > a. The date of the alleged incident
> >
> > b. The date of the latest attempt at an informal resolution

2. A written grievance shall be completed using the inmate grievance form and submitted to a Jail Officer. The Chief Jailer will investigate the grievance and, within a reasonable time, inform the inmate of the action take.

3. Inmate grievance forms shall be readily available to the inmate at all times. These forms may be requests from any staff member.

4. If the inmate needs and requests assistance in completing the inmate grievance form, assistance from a staff member or inmate will be allowed. However, no inmate may file a grievance on behalf of any other inmate.

5. Grievance forms should be turned in to Jail Staff to be forwarded to the Chief Jailer.

Doc. 33-3, Defs.' Ex. B, Jasper County Inmate Handbook, pp. 31-32. The procedure does not outline an appeal process if a detainee is unsatisfied with the result of his grievance. *Id.*

### 3. Analysis

The Court must first look to the factual allegations in Defendant Wagner's motion and those in the Plaintiff's complaint and response, and if they conflict, must take the plaintiff's version of the facts as true. *Turner*, 541 F.3d at 1082. Plaintiff's complaint sufficiently alleges that Plaintiff exhausted his administrative remedies. Plaintiff states that he was aware of the jail's grievance procedure, that he filed a grievance, that the grievance was denied, and that he did not appeal his grievance because no appellate procedure was available to him. Doc. 1, Pl.'s Compl., pp. 3-4.

Plaintiff also attached the three grievances he filed to his complaint as exhibits. Doc. 1-3, pp. 1-6. Plaintiff's first attached grievance concerned Defendant Wagner's retaliatory conduct for asking for a grievance. Doc. 1-3, pp.1-2; see also Doc. 35, p. 18, 18-24. Plaintiff's second grievance concerned the withholding of cleaning supplies. Doc. 1-3, pp. 3-4; see also Pl's Depo, Doc. 35, p. 18, 5-6. Plaintiff's third grievance concerned conditions in the holding cell. Doc. 1-3, pp.5-6, Pl's Depo, Doc. 35, p. 19, 10-13.

Defendant Wagner's presented facts—up to this point—do not conflict with Plaintiff's

version of the facts. Defendant agrees that Plaintiff filed three grievances, that they concerned the same issues as stated-above, and that Plaintiff did not file an appeal. See Doc. 33-6, pp.7-8. However, Defendant also contends that an appeal process for the denial of a grievance was provided, while Plaintiff contends no appellate procedure was available. When accepted as true, Plaintiff's complaint shows that the normal grievance procedure was available to him, and that Plaintiff exhausted his administrative remedies for both his First and Fourteenth Amendment claims. Therefore, as Plaintiff's complaint is not subject to dismissal based on Plaintiff's version of the facts, the court must proceed to the second step to make specific findings of fact in order to resolve the disputed factual issues related to exhaustion.

At step two of the *Turner* analysis, the Court must weigh the evidence and make findings of fact. In support of his Motion, Defendant Wagner presents the Jasper County Inmate Handbook, which outlines the grievance procedure available to detainees. Defendant Wagner states that the grievance "procedure makes clear that appealing [a] decision was permitted." Doc. 33-6, p. 8 (citing Defs.' Ex. B, Inmate Handbook, at § 27. Nowhere in the Handbook is an appellate procedure outlined or mentioned. By filing formal grievances as provided in the Inmate Handbook, Plaintiff fully exhausted his administrative remedies. Therefore, Defendant Wagner's Motion for Summary Judgment, construed as a Motion to Dismiss for Failure to Exhaust, must be **DENIED**.

## B. Eleventh Amendment Immunity

In his complaint, Plaintiff sues Defendants in both their individual and official capacities. Doc. 1-1, p. 2. Defendants are entitled to summary judgment in their official capacities because they are immune from suit pursuant to the Eleventh Amendment. The Eleventh Amendment protects states from being sued in federal court unless they consent. *Manders v. Lee*, 338 F.3d

1304, 1308 (11th Cir. 2003). This immunity extends to state officers, state officials, and any individual acting as an "arm of the State." *Regents of the Univ. Of Cal. v. Doe*, 519 U.S. 425, 429 (1997). Determining if a particular defendant is an "arm of the state" depends on the particular function the defendant was engaged in during the complained about event. *Id.*

In the context of law enforcement officers, this Circuit has held that Georgia's sheriffs and their deputies are entitled to immunity under the Eleventh Amendment to the Constitution for claims arising from their use of "force policies" in the operation of county jails. *Mander*s, 338 F.3d 1304. Additionally, neither sheriffs nor their deputies and jailers, as state officials acting in their official capacities, are considered "persons" for purposes of Section 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Since Section 1983 requires that a "person" deprive a plaintiff of his constitutional rights, the lack of a "person" in this case establishes an independent ground for dismissal of Plaintiff's claims. *Id.* Defendants are thus entitled to summary judgment against the Plaintiff for claims made against them in their official capacities.

C.  Section 1983 and Qualified Immunity

Plaintiff brings claims against the Defendants in their individual capacities considered by under Section 1983 of Title 42 of the United States Code, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute creates no protected rights, but instead provides a remedy for a violation of constitutional rights committed under color of state law. There is no debate that Defendants were acting under color of state law during all the events pertinent to this case. Thus,

the issue under consideration is whether the Defendants violated Plaintiff's constitutional rights. Even assuming, however, that Defendants violated Plaintiff's constitutional rights, the Defendants may still enjoy the protection of qualified immunity against claims brought against them in their individual capacity. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Although Defendants do not raise the defense of qualified immunity in their Motion for Summary Judgment, The Court may raise the issue *sua sponte* at the summary judgment stage and determine whether the Defendants are entitled to qualified immunity as a matter of law. See *Lillo ex rel. Estate of Lillo v. Bruhn*, 413 F. App'x 161, 162 (11th Cir. 2011) (holding that "there was no error on the part of the district court when it *sua sponte* raised the issue of qualified immunity").

Courts employ a two-part framework to evaluate qualified immunity claims.[1] In order to deprive a defendant of qualified immunity, a plaintiff must demonstrate both that a constitutional violation occurred and that the constitutional right violated was clearly established.[2] *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The court may analyze those two questions in whatever order is most appropriate in the case before it. *Pearson v. Callahan*, 555 U.S. 223 (2009).

D.  Plaintiff's Fourteenth Amendment Due Process Claim and Pre-Set Bond Schedules in Georgia

---

[1] There is an often overlooked requirement that precedes that two-part inquiry: whether Defendants were acting within the scope of his discretionary authority. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Here, it is clear that the officers were operating within the scope of their discretionary authority during the incident.

[2] At the summary judgment phase, the Court answers these two questions taking the facts in the light most favorable to the plaintiff.

Plaintiff claims that he was denied the opportunity to post bond after his bond had been set. Specifically, Plaintiff alleges that he suffered a "loss of liberty" when Defendants Campbell and Pound "hid" Plaintiff's warrants and bond amounts from him, therefore not allowing him to post bond and be released. Doc. 1-1, p. 11. Defendants argue that Plaintiff's claim should be analyzed under the Eighth Amendment's prohibition on excessive bail. *Campbell v. Johnson*, 586 F.3d 835, 842 (11th Cir. 2009) (citing *Baze v. Rees,* 553 U.S. 35 (2008)). Plaintiff does not allege that his bail was set at an amount higher than an amount reasonably calculated to insure the presence of the defendant at trial, or that it was excessive at all. *Stack v. Boyle*, 342 U.S. 1, 5 (1951). Instead, although not addressed in Defendants' brief, the facts of this case implicate Plaintiff's Fourteenth Amendment right to Due Process.

To establish a violation of the due process clause of the Fourteenth Amendment, Plaintiff must prove three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). In his complaint, Plaintiff alleges that he suffered a "loss of liberty" in violation of his due process rights, because he was not allowed to post bond. As explained below, however, Plaintiff's bond had not yet been set during his booking and initial intake. Within 48 hours of his arrest, Plaintiff appeared before a judicial officer who determined that he was not entitled to be released and transferred the matter to the superior court for further consideration.

Liberty interests protected by the Fourteenth Amendment may arise from two sources: the Due Process Clause itself and the laws of the states. *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). A "state creates a protected liberty interest by placing substantive limitations on official discretion." *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983). "[T]he most common

manner in which a State creates a liberty interest is by [1] establishing 'substantive predicates' to govern official decision-making, and, further, by [2] mandating the outcome to be reached upon a finding that the relevant criteria have been met." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 462, (1989) (citations omitted). In order to determine whether Plaintiff had a protected liberty interest when he was incarcerated at Jasper County Jail, relevant Georgia law must be examined.

Section 17-6-1 of the Official Code of Georgia (hereinafter "O.C.G.A.") governs bailable offenses, as well as the timeframe for when a person charged with a crime may be released on bond. The Code provides that the judge of any court of inquiry may by written order establish a schedule of bails, and a person charged with committing an offense "shall be released from custody upon posting bail as fixed in the schedule." *Id*. § 17–6–1(f)(1) (emphasis added). The Code also states, however, "that the following offenses are bailable only before a judge of the superior court:"

> (11) Kidnapping, arson, aggravated assault, or burglary in any degree if the person, at the time of the alleged kidnapping, arson, aggravated assault, or burglary in any degree, had previously been convicted of, was on probation or parole with respect to, or was on bail for kidnapping, arson, aggravated assault, burglary in any degree…

O.C.G.A. § 14-6-1 (11). In other words, although a pre-set bond schedule may be established on an arrest warrant by a Magistrate Judge, if the arrestee can only be bailed before a superior court judge, the initial pre-set bond amount is rendered unenforceable.

In the instant case, a total of six warrants were issued for Plaintiff on May 28, 2013. Each warrant was issued by the Jasper County Magistrate Court, and a bond amount was set for each warrant pursuant to a bond schedule. Warrants for arrest were issued for: (1) speeding in violation of O.C.G.A. § 40-6-181, with bail set in the amount of $1,000.00; (2) obstruction of an officer in violation of O.C.G.A. § 16-10-24(B), with bail set in the amount of $5,000.00; (3) aggravated

assault against a law enforcement officer in violation of O.C.G.A. § 16-5-21, with bail set in the amount of $5,000.00; (4) fleeing/attempting to elude an officer in violation of O.C.G.A. § 40-6-395, with bail set in the amount of $5,000.00; (5) driving while license suspended or revoked in violation of O.C.G.A. § 40-5-121, with bail set at $1,000.00; and (6) habitual violator with revoked license in violation of O.C.G.A. § 40-5-58, with bail set at $5,000.00. Doc. 33-2, Defs.' Ex. A., Arrest Warrants for Plaintiff.

Plaintiff correctly alleges that the bond amounts for each warrant were set by a Magistrate Judge in accordance with the fixed bond schedules, as provided in O.C.G.A. § 17-6-1; see Doc. 33-2, Defs.' Ex. A., Arrest Warrants for Plaintiff. Nevertheless, his Due Process rights were not violated when Defendants refused to release Plaintiff on the pre-set bond amounts because those amounts were unenforceable. As the magistrate judge noted on Plaintiff's First Appearance Hearing Information Sheet, Plaintiff was required to be presented before a superior court judge pursuant to O.C.G.A. § 17-6-1(a)(11) because he had two previous convictions of aggravated assault. As such, Plaintiff could not post a bond, or be released, until he was brought before a superior court judge and his bond amount was determined.

Further, the Court notes that Defendants Campbell and Pound are not responsible for setting or revoking Plaintiff's bond. See O.C.G.A. § 17–6–1 (bond set by judicial officer). Any claim for *denial* of bond that Plaintiff might conceivably have would not be valid against the present Defendants. See *Pittman v. Hunnicutt*, No. 5:09-CV-259 (CAR), 2009 WL 2971360, at *2 (M.D. Ga. Sept. 16, 2009) (dismissing Plaintiff's denial of bail claims against an officer pursuant to 28 U.S.C. § 1915).

Although neither party addressed the argument, similar facts have been construed as a claim of false imprisonment: essentially that Defendants Campbell and Pound refused to instruct

Plaintiff as to the bail amounts listed on the warrant, and as such he was kept in jail when he was entitled to release. See *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009) (analyzing a jail's refusal to release on bail bond after the court approved the bond as a claim of false imprisonment). The Eleventh Circuit recognized the constitutional right, protected by the Fourteenth Amendment, to be free from continued detention after it was or should have been known that the detainee was entitled to release. See *Cannon v. Macon County*, 1 F.3d 1558, 1562–63 (11th Cir. 1993) (citing *Douthit v. Jones*, 619 F.2d 527 (5th Cir. 1980); *Divard v. Pulaski County*, 959 F.2d 662 (7th Cir. 1992); *Sanders v. English*, 950 F.2d 1152 (5th Cir. 1992)). Because Plaintiff was not entitled to release—as demonstrated above—Plaintiff cannot successfully bring a claim of false imprisonment.

Because Plaintiff has failed to show that a constitutional violation occurred during the process of his initial appearance and bond hearing, and because Defendants are entitled to qualified immunity, Defendants are entitled to summary judgment on Plaintiff's Fourteenth Amendment claims.

E. <u>Plaintiff's Claims Against Defendant Wagner</u>

Plaintiff contends that Defendant Wagner retaliated against him for seeking to file a grievance, by confining him in a holding cell, under inhumane conditions, for a period of four days. In his deposition, Plaintiff recites the following facts supporting his claims against Defendant Wagner:

> Mr. Wagner went and said, "I'll be back in a minute." He left. He comes back, and he says, "The reason you ain't getting chemicals is because you kept some." And I said, "Well, there's not the reason to deny us hygiene because I kept some chemicals. That ain't got nothing to do with everybody's hygiene." He said, "Well, y'all ain't getting no more, and I said, "Well, you can't do that." And he said, "Well, that's the reason you ain't getting none," and I said, "Well, I want a grievance."

> And he said if I opened my mouth up again, he'd lock me up in the front cell -- in the holding tank up front.  And I said, "Can I please have a grievance," and he said, "Pack your stuff" -- no, he said "Come with me." He didn't even say to pack your stuff. And he took me up to the front in the put me in a room about the size of this table right here wide. All right? It had a commode in it and a bench. You put your mat down and you had a -- probably about two by two square foot to stand in. And it was on the floor. And the place was filthy. I had to sleep half onto the commode, and they kept in me there for four days.

Pl.'s Depo, Doc. 35, pp. 16-17. This testimony raises claims of retaliation under the First Amendment right to free speech and of inhumane conditions of confinement under the Fourteenth Amendment right to due process.

### 1. First Amendment Claim

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). "To state a [F]irst [A]mendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right." *Id*. at 1242. Rather, "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech." *Id*. A prisoner can establish retaliation by demonstrating that the prison official's actions were "the result of his having filed a grievance concerning the conditions of his imprisonment." *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989).

Courts use a burden-shifting analysis in reviewing a prisoner's First Amendment retaliation claim. *Moton v. Cowart*, 631 F.3d 1337, 1341–42 (11th Cir. 2011). Plaintiff must establish three elements: "(1) 'his speech or act was constitutionally protected'; (2) 'the defendant's retaliatory conduct adversely affected the protected speech'; and (3) 'there is a causal connection between the retaliatory actions and the adverse effect on speech.'" *Moton*, 631 F.3d at 1341 (quoting *Bennett v.*

*Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)). To show causation, the prisoner "must show that the defendant was 'subjectively motivated to discipline' the plaintiff for exercising his First Amendment rights." *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008). If Plaintiff shows that "his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." *Moton*, 631 F.3d at 1341–42 (quoting *Smith*, 532 F.3d at 1278). Since this is Defendants' motion for summary judgment, however, and Plaintiff has the ultimate burden of proof, Defendants need only point to evidence as to the legitimate reason and Plaintiff must show that there is a genuine dispute of material fact concerning Defendant's defense. *See Osterback*, 300 F.Supp.2d at 1254.

Plaintiff alleges that Defendant Wagner placed Plaintiff in a holding cell not intended for habitation in retaliation for Plaintiff requesting a grievance form. This allegation satisfies the first element of Plaintiff's retaliation claim. *See Farrow*, 320 F.3d at 1248 (recognizing that retaliation in the prison setting may be established by demonstrating that a prison official took adverse actions against an inmate because he filed a grievance). Plaintiff testifies in his deposition that Defendant Wagner threatened to lock him up "in a front cell" if he requested a grievance form. When Plaintiff requested a form, Wagner responded, "Pack your stuff," then moved Plaintiff to a tiny cell, without a bed, where Plaintiff remained for four days. Doc. 35, pp. 16-17.

Although Defendants do not contest Plaintiff's testimony that he was confined in a holding cell for four days, they present some evidence to contest the reason for his confinement. Defendants contend that Plaintiff was placed in the holding cell as punishment for "hoarding cleaning chemicals." The Jasper County Inmate Handbook provides that "possession of anything not on the list of 'permitted items' or authorized by the facility to staff" is considered a "major violation" and punishable by "assignment to a disciplinary detention cell block for a period up to

168 hours." Doc. 33-3, Defs.' Ex. B, Jasper County Inmate Handbook, pp. 24-25, 28. Plaintiff, in his deposition, acknowledges that Defendant Wagner told him he had violated jail rules by hoarding cleaning chemicals in his cell, but presents a genuine issue of material fact as to whether Defendant Wagner placed Plaintiff in the holding cell for that reason. Pl's Depo, Doc. 35, pp. 15-16.

Taken in the light most favorable to the Plaintiff, the evidence is sufficient to create a genuine of issue of material fact as to Wagner's intent to retaliate against Plaintiff for requesting a grievance. Further, Wagner would not be entitled to qualified immunity if a constitutional violation was found, because a prisoner's First Amendment right to free speech in filing a grievance was clearly established "as early as 1989." *Hicks v. Ferrero*, 241 F. App'x 595, 598-99 (11th Cir. 2007) (citing *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989)). Therefore, it is recommended that Plaintiff's First Amendment retaliation claim against Defendant Wagner be presented to a jury to determine whether Defendant Wagner placed Plaintiff in the holding cell for his violation of Jasper County policy, or in retaliation for requesting a grievance form.

> ### 2. *Plaintiff's Eighth Amendment Conditions of Confinement Claim as applied to pre-trial detainees through the Fourteenth Amendment*

Plaintiff also presents a genuine issue of material fact as to whether Plaintiff suffered a constitutional violation of the Eighth Amendment's prohibition on cruel and unusual punishment as applied to pre-trial detainees through the due process clause of the Fourteenth Amendment, by being subjected to the conditions described in the holding cell.[3]

Challenges to conditions of confinement "require a two-prong showing; an objective

---

[3] As Plaintiff was a pretrial detainee at the time of these events, his conditions of confinement claim would arise under the Fourteenth Amendment, however the analysis remains the same. *Gilmore v. Hodges*, 738 F. 3d 266, 271 (11th Cir. 2013).

showing of a deprivation or injury that is 'sufficiently serious' to constitute a denial of the 'minimal civilized measure of life's necessities' and a subjective showing that the official had a 'sufficiently culpable state of mind.'" *Evans v. St. Lucie County Jail*, 448 F. App'x 971, 973 (11th Cir. 2011). Restrictive and harsh conditions are part of the penalty criminal offenders pay, so a successful claim requires extreme deprivations of basic human needs or unreasonable risks to future health. *Id*.

Plaintiff's argument about the conditions of confinement focuses on three aspects of his environment: (1) the sleeping arrangements; (2) the cleanliness of the cell; and (3) the size of his cell. See Doc. 1-1, pp. 5-6. While any one of these aspects may constitute a violation of Plaintiff's constitutional rights if it amounts to a serious enough deprivation or omission, such conditions do not have to be considered in isolation from each other in order to constitute a claim. When considered together, the conditions of confinement in the holding cell, as described in Plaintiff's testimony, violate the Eighth Amendment.

Plaintiff has not provided sufficient evidence to show that sleeping on the floor, by itself, created a substantial risk of serious harm or resulted in a denial of "the minimal civilized measure of life's necessities." Plaintiff presents three cases in support of the proposition that sleeping on the floor is a clear violation of the Eighth Amendment. First, Plaintiff cites *Moore v. Morgan*, 922 F. 2d 1553 (11th Cir. 1991), which discusses the findings of a federal magistrate judge with regard to pleading an Eighth Amendment cruel and unusual punishment claim, specifically, that an overcrowded jail where inmates were forced to sleep on the floor could constitute a violation of the Eighth Amendment. *Id.* at 1555, n.1. The Court did not hold that sleeping on the floor, by itself, constituted a constitutional violation, and for that reason the case can be distinguished from the present situation. Further, *Moore* presented facts concerning overcrowded conditions, that were

apparently continuous, not for a finite period as in Plaintiff's case. *Id*; *see also Lareau v. Menson*, 651 F. 2d 96, (2nd Cir. 1981) (holding that permanently overcrowded conditions which led to mattresses placed on the floor eliminating all square footage for movement constituted a violation of the Eighth Amendment); and *Mitchell v. Cuomo*, 758 F. 2d 804 (2nd Cir. 1984) (holding that a district court did not abuse its discretion by preliminarily enjoining defendants from closing a jail facility due to overcrowded conditions).

Plaintiff also cites *Lyons v. Powell*, 838 F.2d 28, 31 (1st Cir. 1988) for its determination that "subjecting pretrial detainees to the use of a floor mattress for anything other than brief emergency circumstances may constitute an impermissible imposition of punishment, thereby violating the due process rights of such detainees." The First Circuit recognized that these conditions only possibly violated the appellant's constitutional rights because he was confined "to his cell for 22–23 hours per day during a 27–day period." *Id*. The court "note[d] that the constitutional requirements of confinement may be less stringent in the case of a short-term confinement than in one of longer duration." *Id*. This case, although persuasive, is not binding authority. Further, it can be distinguished as Plaintiff was only subject to sleeping on the floor for four days, not twenty-seven.

In an unpublished opinion, the Eleventh Circuit held that "being required to sleep on a mat [on the floor] is 'not necessarily a constitutional violation,'" especially when the Plaintiff fails to show how the sleeping condition clearly created a serious risk to his health. See *Ellis v. Pierce Cty., GA*, 415 F. App'x 215, 218 (11th Cir. 2011) (citing *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985)). Plaintiff's claims align more with the facts in *Ellis*, than in any of the previously discussed cases, and for that reason, Plaintiff's sleeping arrangement on a floor mattress for four days, by itself, did not violate the Eighth Amendment.

Plaintiff's second challenge, the cleanliness of his cell, when considered in isolation, does not violate the Eighth Amendment. Plaintiff claims that the cell had mold in the air vent, and that he was forced to sleep close to the toilet, possibly exposing himself to human waste. With regard to Plaintiff's proximity to his toilet, "[e]xposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in *Farmer* and the more general standards of dignity embodied in the eighth amendment." *Brooks v. Warden*, 2015 WL 5157339, at *7 (11th Cir. 2015) (quoting *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001)). "Allegations of unhygienic conditions, when combined with the jail's failure to provide detainees with a way to clean for themselves with running water or other supplies" may state a claim for relief. *Id*. (quoting *Budd v. Motley*, 711 F.3d 840 (7th Cir. 2013). Plaintiff does not claim or present evidence that he was exposed to any human waste, nor does he expound upon the "filthy" conditions of his holding cell in violation of the Eighth Amendment. *See Capers v. Hetzel*, 2012 WL 6632395 (M.D. Ala. 2012) (granting summary judgment where toilets were set to flush automatically every two hours); *Alfred v. Bryant*, 378 F. App'x 977 (11th Cir. 2010) (upholding District Court dismissing claim as frivolous where plaintiff alleged toilet did not completely flush its contents and overflowed several times and Plaintiff had to clean it with his bare hands); *Johnson v. Lewis*, 217 F.3d 726, 733 (9th Cir. 2000) ("we have no doubt that toilets can be unavailable for period of time without violating the Eighth Amendment"); *Scaff-Martinez v. Reese*, 2012 WL 6754889 (N.D. Ala. 2012) (finding no violation of clearly established law where toilet flushing is controlled by guards, resulting in delays of up to two hours).

Similarly, Plaintiff's claims of exposure to mold and mildew, considered in isolation, do not rise to a level that would violate the Eighth Amendment. See *Jordan v. Franks*, 2010 WL 4007641, at *2 (S.D. Ga. Aug. 30, 2010) *report and recommendation adopted*, 2010 WL 4007637

(S.D. Ga. Oct. 12, 2010) ("It is well established that the mere exposure to mold, mildew, and odors does not amount to 'an excessive risk to inmate health or safety' under the Eighth Amendment.")(citing *Briggs v. Wall*, 2009 WL 4884529 at *2 (D.R.I. Dec.16, 2009); *Batiste v. Madison Parish Sheriff's Office*, 2007 WL 2263077 at *2–3 (W.D.La. June 22, 2007) (no constitutional claim where plaintiff was exposed to mold and mildew for eight months absent some showing that he suffered actual physical harm from the exposure); *Shrader v. White*, 761 F.2d 975, 983–87 (4th Cir.1985); see also *Cable v. Wa II*, 2010 WL 1486494 at *4 (D.R.I. Mar.18, 2010) (collecting cases showing that a general lack of facility cleanliness, without more, cannot state a present harm Eighth Amendment claim)).

Plaintiff's third challenge, the size of the holding cell, when considered alone, could violate the Eight Amendment. Plaintiff states that he had no more than four feet squared of space to walk around—half the size of a typical bathroom stall—in his holding cell for four days. Pl's Depo, Doc. 35, p. 17. Plaintiff stated at his sworn deposition, the cell was no larger than the table in the room. *Id*. While this testimony seems incredible, Defendants do not present evidence to rebut Plaintiff's description of the size of the holding cell, nor do they address the conditions of Plaintiff's confinement. The Eleventh Circuit has never directly addressed what square footage amount violates the Eighth Amendment. But see *Williams v. Edwards*, 547 F.2d 1206, 1215, n. 8 (5th Cir. 1977) (quoting *Gates v. Collier*, N.D.Miss., 1975, 390 F.Supp. 482, 486) ("We know from the undisputed evidence that generally accepted correctional standards require a minimum of 50 square feet of living area for every prison inmate."); see also *Rhodes v. Chapman*, 452 U.S. 337, 350 (1981) (recognizing that several studies on prison capacity recommend at least "50-55 square feet of living quarters").

While the Court recognizes that a showing of unconstitutional conditions of confinement must clear a "high bar," this is a rare case where the facts shown resulted in a denial of "the minimal civilized measure of life's necessities," and constitute "extreme deprivations." Plaintiff has testified that he was forced to spend four days in an unsanitary cell without a bed, where he could not stretch out his body to lie down and had to sleep partially on the toilet. Defendants have not presented evidence to rebut this testimony. Plaintiff's testimony is sufficient to present a question of fact as to whether or not the conditions in the holding cell constituted cruel and usual punishment.

To avoid qualified immunity, Plaintiff must also show that the Eighth Amendment right at issue "was clearly established such that a reasonable official would understand that what he is doing violates that right." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc) (quoting *Bashir v. Rockdale Cnty.*, 445 F.3d 1323, 1327 (11th Cir. 2006)) (internal quotation marks omitted). A right can be clearly established "either by similar prior precedent, or in rare cases of 'obvious clarity.'" *Gilmore v. Hodges*, 738 F.3d 266, 277 (11th Cir. 2013). "Exact factual identity with a previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin*, 642 F.3d at 1013.

At least one Supreme Court case, and one binding Fifth Circuit case put Defendant on notice that Plaintiff's conditions violated his Eighth Amendment right. See *Rhodes v. Chapman*, 452 U.S. 337 and *Williams v Edwards*, 547 F.2d 1206. In *Rhodes*, the United States Supreme Court recognized that "[c]onfinement ... is a form of punishment subject to scrutiny under the Eighth Amendment standards," and that the reviewing court must look to whether the circumstances of the inmate are such that they "either inflict[ ] unnecessary or wanton pain or [are] grossly disproportionate to the severity of crimes warranting imprisonment." *Rhodes*, 452 U.S. at 345,

348. In *Rhodes*, the Supreme Court held constitutional the double celling of inmates in a 63 square foot space originally designed for one inmate. *Id.* *Williams* noted that "accepted correctional standards require a minimum of 50 square feet of living area for every prison inmate." *Williams*, 547 F.2d at 1215, n. 8. More recently, the Eleventh Circuit made a note as to the size of an individual cell, when evaluating an Eighth Amendment claim concerning conditions of confinement. *Chandler*, 379 F.3d at 1284, n. 9. And while *Rhodes* involved double occupancy, and *Williams* involved overcrowding, "[e]xact factual identity with a previously decided case is not required." *Coffin*, 642 F.3d at 1013. In the present case, Plaintiff claims his cell was much smaller that the acceptable standards, with only "four square feet" of walking space.[4] These cases should have provided "fair and clear warning" that Plaintiff's cell size could violate the Eighth Amendment. See *Brooks v. Warden*, 800 F.3d 1295, 1306 (11th Cir. 2015).

Further, in light of *Brooks*, this could be a "'rare case[ ] of 'obvious clarity,'' in which 'conduct is so egregious that no prior case law is needed to put a reasonable officer on notice of its unconstitutionality'" *Brooks*, 800 F.3d at 1307 (quoting *Gilmore v. Hodges,* 738 F.3d 266, 277, 279 (11th Cir. 2013)). Plaintiff's testimony regarding the size of the holding cell suggests a cell smaller than a table, where Plaintiff could not even lie down unless he "slept half onto the commode." Doc. 35, p. 17. Furthermore, Plaintiff's experience in the holding cell, if believed, could be considered "not merely unreasonable, but an act of 'obvious cruelty.'" *Brooks*, 800 F.3d at 1307 (quoting *Hope v. Pelzer*, 536 U.S. 730, 745 (2002)).

---

[4] Constitutional challenges to cell size have been reviewed in courts across the country and varying sizes of cells have been found constitutional. See, e.g., *Keenan v. Hall*, 83 F.3d 1083, 1091-92 (9th Cir. 1996) (providing that the Eighth Amendment does not guarantee an inmate more than the 54 square feet he was provided in his cell); *Schwartz v. Zavaras*, No. 96-1131, 1996 WL 494413, at *2 (10th Cir. (Colo.) Aug. 27, 1996) (affirming that 54 square foot cell was constitutional for an individual housed in administrative segregation); *Dohner v. McCarthy*, 635 F.Supp. 408, 425 (C.D.Cal. 1985) (holding that double celling inmates in a 99 square foot cell is constitutional, even though cell size is greatly reduced when the second bed is lowered); *Watson v. Ray*, 90 F.R.D. 143, 149 (S.D.Iowa 1981) (upholding constitutionality of 48 square foot cell for inmates in general population); *Peterkin v. Jeffes*, 855 F.2d 1021, 1026-27 (3rd Cir. 1988) (upholding lower court's finding that 71 square feet and 60 square feet for cells housing death row and administrative segregation inmates to be more than constitutionally adequate).

In light of the foregoing, Defendant Wagner's Motion for Summary Judgment as to Plaintiff's Eighth Amendment conditions of confinement must be **DENIED** as Plaintiff has shown a genuine issue of material fact as to whether the conditions of his cell violated the Eighth Amendment and that if a violation did occur, Defendant Wagner would not be shielded by qualified immunity.

### 3.   Damages under the PLRA

Plaintiff requests compensatory damages for Plaintiff's "physical and emotional injuries" in the amount of $45,000 jointly against each Defendant; punitive damages against each Defendant in the amount of $50,000; and any other relief the Court deems appropriate. Doc. 1-1, pp. 16-18. The Prison Litigation Reform Act ("PLRA") limits the type of monetary relief available to Plaintiff "absent a showing of physical injury." While Plaintiff states that he suffered a "back injury" because of the sleeping arrangment, Plaintiff does not present any further evidence of back pain, or a medical diagnosis, nor did he grieve the issue. Therefore, Plaintiff may only be entitled to nominal damages. See *Al-Amin v. Smith*, 637 F.3d 1192 (11th Cir. 2011).

### IV.        CONCLUSION

Because Defendants Campbell and Pound are entitled to judgment as a matter of law regarding the opportunity to post the scheduled bond amount listed on his arrest warrant, and because Defendants are entitled to qualified immunity on those claims, it is hereby **RECOMMENDED** that Defendants Campbell and Pound's Motion for Summary Judgment be **GRANTED**. However, Plaintiff has demonstrated a genuine issue of material fact as to whether Defendant Wagner retaliated against Plaintiff in violation of his First Amendment rights by placing him in a holding cell after he requested a grievance, and whether the conditions of the holding cell violated Plaintiff's Eight Amendment right against cruel and unusual punishment. It is

therefore **RECOMMENDED** that Defendant Wagner's Motion for Summary Judgment be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, the 11th day of January, 2016.


s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge